NOT DESIGNATED FOR PUBLICATION

No. 128,955

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

WILLIAM MERL HULSE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Saline District Court; AMY NORTON, judge. Submitted without oral argument. Opinion filed July 31, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Miranda R. Neal*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., ISHERWOOD and BOLTON FLEMING, JJ.

PER CURIAM:  William M. Hulse was convicted by a jury of criminal threat. On appeal, Hulse first alleges that the district court's culpable mental state instruction erroneously defined the term "intentionally." But we find the district court did not err because the instruction fairly and accurately stated the applicable law. Second, Hulse argues that the district court improperly instructed the jury in its definition of "threat" by including factually inappropriate, superfluous language. While we find that the language challenged by Hulse was factually inappropriate, the inclusion of the language was not clearly erroneous and does not require reversal. Accordingly, we affirm.

1

William M. Hulse entered a shop where his daughter-in-law, Jane (pseudonym), was working. At the time, Hulse's son and Jane were in the process of separating and determining custody of their children. After entering the store, Hulse accused Jane of calling the police to perform a welfare check on his son and grandchildren. Hulse's accusation led to a heated discussion between the parties, during which Hulse threatened to kill Jane. Jane's co-worker witnessed the incident, and video footage captured Hulse in the store. Hulse would later admit to being angry with Jane and calling her a "bitch" before leaving the store.

As a result of this incident, the State charged Hulse with criminal threat. Hulse was found guilty by a jury and received a suspended sentence of 7 months in prison. Hulse timely appeals.

## ANALYSIS

### DID THE DISTRICT COURT ERRONEOUSLY DEFINE "INTENTIONALLY" IN JURY INSTRUCTION 4?

Hulse's first argument on appeal is that the district court erroneously defined the culpable mental state of "intentionally" in Instruction 4.

*Standard of Review*

> "When analyzing jury instructions, appellate courts follow a three-step process:
> (1) determine whether the appellate court can or should review the issue, in other words,
> whether there is a lack of appellate jurisdiction or a failure to preserve the issue for
> appeal; (2) consider the merits of the claim to determine whether error occurred below;
> and (3) assess whether the error requires reversal—in other words, whether the error can
> be deemed harmless." State v. Hollins, 320 Kan. 240, 242, 564 P.3d 778 (2025).

To determine whether the instruction was erroneous, we "consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." *Hollins*, 320 Kan. at 242.

Because Hulse failed to object to the jury instructions at trial, if we find error, we consider whether the instruction was clearly erroneous. K.S.A. 22-3414(3). To be clearly erroneous, the instruction must be legally or factually inappropriate and we must be firmly convinced that the jury would have reached a different verdict if the erroneous instruction would not have been given. The party claiming error has the burden to show error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021).

*Discussion*

Hulse's challenge is limited to the *legal* appropriateness of Instruction 4. Appellate courts apply an unlimited standard of review to determine whether an instruction is legally appropriate. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012). "To be legally appropriate, the instruction must fairly and accurately state the applicable law." *State v. Wimbley*, 313 Kan. 1029, 1034, 493 P.3d 951 (2021).

We begin our analysis with the definition of the crime of criminal threat found in K.S.A. 21-5415(a)(1), which provides in pertinent part:

> "(a) A criminal threat is any threat to
> (1) Commit violence communicated with intent to place another in fear. . . ."
> K.S.A. 21-5415(a)(1).

Under the plain language of K.S.A. 21-5415(a)(1), the crime of criminal threat requires a specific intent "to place another in fear." The district court instructed the jury on the definition of "intentionally" in Instruction 4:

3

"Instruction No. 4

> "The State must prove that the defendant committed the crime of criminal threat intentionally.
>
> "A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State or cause the result complained about by the State."

Instruction 4 was based on the language of K.S.A. 21-5202(h), which provides:

> "(h) A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 21-5202(h).

Hulse acknowledges that Instruction 4 was based on K.S.A. 21-5202(h) but argues that the crime of criminal threat presents a caveat under the statute. He argues that under K.S.A. 21-5415(a)(1), the crime of criminal threat requires that the defendant communicate a threat to commit violence "with the intent to place another in fear," which is a result. Hulse believes Instruction 4 was legally inappropriate because it told jurors they could convict if they determined that Hulse had intent to commit the act *or* cause a result. Hulse relies upon the language from Instruction 4 that defined "intentionally" as a "defendant's desire or conscious objective to do the act complained about by the State or cause the result complained about by the State." This language closely mirrors language from the culpable mental state statute, K.S.A. 21-5202(h), which describes that a defendant acts intentionally if they "engage in the conduct or cause the result." Both Instruction 4 and K.S.A. 21-5202(h) allow intent to be demonstrated by either an act or a result. Nonetheless, Hulse believes the inclusion of both options was legally inappropriate and could have reasonably misled the jury.

We first note that Hulse has failed to support his argument with any citation to pertinent legal authority. "Failure to support a point with pertinent authority or show why

4

it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue." *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). Issues not adequately briefed are deemed waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

Hulse's argument also fails on the merits because it ignores the plain language of K.S.A. 21-5202(h), which clearly allows intent to be proven by showing either an act *or* a result. "When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words." *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

We also note that Instruction 4 was based on PIK Crim. 4th 52.010. PIK instructions "bring accuracy, clarity, and uniformity to instructions." *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). Generally, "if a court follows the PIK instructions, more than likely the instruction will be legally correct, not because of any independent legal significance of the pattern instruction, but because the committee usually writes an instruction that accurately reflects the law." *Wimbley*, 313 Kan. at 1031.

We find that Instruction 4 was properly based on K.S.A. 21-5202(h). Hulse has failed to prove that Instruction 4 was legally inappropriate.

WAS JURY INSTRUCTION 3 CLEARLY ERRONEOUS?

Hulse's second argument on appeal is that Instruction 3 was clearly erroneous because it included a definition of "threat" that did not apply under the facts of the case. Hulse believes this error could have misled the jury.

5

*Standard of Review*

Hulse's challenge only asks us to consider whether Instruction 3 was *factually* inappropriate and, if so, whether that error requires reversal. "In determining whether an instruction was factually appropriate, [courts] must determine whether there was sufficient evidence, viewed in the light most favorable to the [defendant or] the requesting party, that would have supported the instruction." *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

Because Hulse failed to object to Instruction 3 in district court, we review the instruction to determine if it was clearly erroneous. K.S.A. 22-3414(3).

> "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice." *Mendez*, 319 Kan. at 727-28.

*Discussion*

Hulse challenges the following language from Instruction 3: "The term 'threat' includes any statement made by the defendant that he has already committed the act." Instruction 3 provided the elements of the crime of criminal threat, and this additional sentence was placed at the end of the instruction.

The State concedes that the inclusion of this language in Instruction 3 was factually inappropriate. We agree. There was no evidence at trial that Hulse made a statement that he had already committed a threatened act.

We next consider whether the result of the trial would have been different without the erroneous language in Instruction 3. Hulse bears the burden of proof on this point.

6

Here, we agree with the State that at most, Hulse has shown the result "could" have been different, not "would" have been different. Hulse specifically argues in his brief, "There is a real possibility that this evidence could have been used by the jury to convict Mr. Hulse under the factually inappropriate definition." But Hulse fails to argue how the verdict *would* have been different without the erroneous instructional language.

To the contrary, the superfluous language at the end of Instruction 3 was taken directly from PIK Crim. 4th 54.370. The district court's error was that it failed to recognize the additional language describing past threats was unwarranted in this case. A panel of our court has previously considered the same mistake—the erroneous inclusion of the superfluous threat language.

> "In the instant case, the jury was not told that an element of the offense had been established. Nothing in the language of the instruction usurped the jury's right to make factual findings or weigh the credibility of the witnesses. The disputed language in the jury instruction was merely a definitional statement meant to inform the jury on the exact scope of the word 'threat' and was not clearly erroneous." *State v. Potts*, 34 Kan. App. 2d 329, 335, 118 P.3d 692 (2005), *aff'd in part, rev'd in part*, 281 Kan. 863, 135 P.3d 1054 (2006).

We reach the same conclusion here; the inclusion of the additional definitional language did not impact the rights or duties of the jury. Under the facts of this case, the challenged language was simply an unwarranted, definitional statement that did not impact the jury's decision.

We also rely upon the significant evidence of Hulse's guilt to conclude the error does not require reversal. Video footage showed that Hulse entered the store where Jane was working. Hulse admitted at trial that he argued with Jane, using profanity and an angry tone. Hulse acknowledged that he accused Jane of causing his son's arrest and admitted that he called her a "bitch" on the way out of the store. Both Jane and a co-

7

worker testified that Hulse made a threat to kill Jane during this heated exchange. Hulse has failed to prove how the removal of the language at the end of Instruction 3 *would* have changed the jury's verdict. As a result, while the superfluous language at the end of Instruction 3 was erroneously included, its inclusion does not result in reversal.

Affirmed.